872 F.2d 420
Unpublished Disposition
 NOTICE: Fourth Circuit I.O.P. 36.6 states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Fourth Circuit.
UNITED STATES of America, Plaintiff-Appellee,
v.
Garland R. HADDOCK, Defendant & Third Party Plaintiff-Appellant,
v.
Wayland J. HARDEE, Pansy Sue Hardee, Third Party Defendants.
 No. 88-2826.
 United States Court of Appeals, Fourth Circuit.
 Argued Dec. 8, 1988.
Decided March 21, 1989.
 
 David Peter Voerman (David P. Voerman, P.A., on brief) for appellant.
 James Gordon Carpenter, Assistant United States Attorney (Margaret Person Currin, United States Attorney, Rudolf A. Renfer, Jr., Assistant United States Attorney, on brief) for appellee.
 Before K.K. HALL, PHILLIPS, and SPROUSE, Circuit Judges.
 PER CURIAM:
 
 
 1
 Garland Haddock appeals a $17,000 civil judgment entered against him in an action brought by the United States government, acting on behalf of the Farmers Home Administration ("FHA"), for violation of a North Carolina statute prohibiting the wrongful cutting of timber. For the reasons set forth below, we reverse.
 
 I.
 
 2
 The pertinent facts in this case are undisputed and were stipulated to by the parties. Wayland J. Hardee and his wife, Pansy Sue Hardee, had an ownership interest in certain property located in Pitt County, North Carolina. They owned an undivided one-half interest in fee simple and a life estate in the other one-half undivided interest, with the remainder in their daughter, Christy Michelle Hardee. On three separate occasions in 1980 and 1981, Wayland and Pansy Sue Hardee granted deeds of trust to the FHA to secure a promissory note owed by the Hardees to the FHA. The FHA recorded the deeds of trust in the Pitt County Registry of Deeds.
 
 
 3
 Sometime in the spring of 1985, Wayland Hardee contacted Garland Haddock, a logger, and made arrangements for Haddock to cut timber from the real estate covered by the deeds of trust. The Hardees did not give a timber deed to Haddock who was only to cut the timber, sell it to a mill, and then give the Hardees a certain percentage of the resulting profits from the sale. It was customary practice in the North Carolina timber business in 1985 to conduct a title search on a particular block of timber to be cut, only if a timber deed was to be given to the logger cutting the timber. Under the arrangement in this case, it was not customary practice to search the title on the timber.
 
 
 4
 It is uncontroverted that the Hardees were required under the deeds of trust to obtain the written consent of the government before cutting or removing any timber from the property.[1] It is also uncontroverted that the Hardees did not obtain such consent. Nor did Garland Haddock, who had neither actual nor constructive knowledge of the government's security interest in the land when he cut the timber.
 
 
 5
 The FHA became aware that Haddock was cutting timber from the Hardees' property in June of 1985 when Jim Smith, the Assistant County Supervisor for the FHA in Greenville, saw a logging crew actually cutting the timber. Smith called Hardee to find out who was cutting the timber, but did not contact Haddock until almost two months later, in August. Haddock sold the timber to a lumber mill for $17,000. He paid Wayland and Pansy Hardee $10,322.18 out of that amount.
 
 
 6
 The United States brought suit against Haddock on June 30, 1986, for wrongfully cutting and removing the timber. Haddock in turn filed suit against Wayland and Pansy Hardee, as third-party defendants. The government's case proceeded on two theories, the common law tort of conversion and the violation of N.C.Gen.Stat. Sec. 1-539.1(a) which allows double damages for the wrongful cutting of timber. Haddock sued the Hardees for breach of contract.
 
 
 7
 The case was heard by a magistrate without a jury.[2] At the conclusion of the trial, the magistrate denied recovery on the theory of conversion, but found a violation of the statute and awarded the government $17,000, double the value of the timber sold.[3] The magistrate also found that Haddock was entitled to recover the same amount from the Hardees. Garland Haddock appeals from this final order.
 
 II.
 
 8
 On appeal, Haddock contends that the magistrate erred in holding that the government, as mortgagee, was entitled to recover damages for the cut timber under N.C.Gen.Stat. Sec. 1-539.1(a), which states:
 
 
 9
 Any person, firm or corporation not being the bona fide owner thereof or agent of the owner who shall without the consent and permission of the bona fide owner enter upon the land of another and injure, cut or remove any valuable wood, timber, shrub or tree therefrom, shall be liable to the owner of said land for double the value of such wood, timber, shrubs or trees so injured, cut or removed.
 
 
 10
 Haddock argues that the government had no right to recover under this statute because the Hardees, and not the FHA, were the bona fide owners of the land. There is no dispute about the fact that Haddock had the express consent of the Hardees to enter upon the land and cut the timber. Therefore, if the Hardees are deemed to be the owners of the land, the government may not recover under the statute.
 
 
 11
 The government, however, argues that it became the owner of the land when the Hardees executed the deeds of trust and that consequently, it was entitled to recover damages for the cutting and removal of timber from land that it owned. The magistrate agreed. This is a very creative theory advanced by the government, but we think an unsound one.
 
 
 12
 The only question before us is whether the government, by virtue of its security interest in the Hardees' property, is the "bona fide owner" of the property for purposes of N.C.Gen.Stat. Sec. 1-539.1(a). To answer this query in the affirmative would require an expansive reading of the statute that we believe would be unwarranted.
 
 
 13
 We begin with the well-established concept that statutes in derogation of the common law or statutes imposing a penalty are to be strictly construed. Thus, in Jones v. Georgia-Pacific Corp., 15 N.C.App. 515, 190 S.E.2d 422, 424 (1972), after noting this principle and the fact that N.C.Gen.Stat. Sec. 1-539.1(a) enhances the common law measure of damages allowed for trespass, the court said: "Strict construction of G.S. Sec. 1-539.1 requires that everything be excluded from the operation of the statute which does not come within the scope of the language used, taking the words in their natural and ordinary meaning." (citation omitted).
 
 
 14
 In order to recover penalties under N.C.Gen.Stat. Sec. 1-539.1(a), a plaintiff must show that he is the owner of the land from which the timber was cut. Woodard v. Marshall, 14 N.C.App. 67, 187 S.E.2d 430 (1972). The natural and ordinary meaning of the term owner in this case must be the Hardees, who except as against the mortgagee retained all the incidents of ownership. Cleve v. Adams, 222 N.C. 211, 22 S.E.2d 567 (1942). Although the government had legal title as against the Hardees, it did not own the property so that it could bring an action against a third person who entered upon the land with the express consent and approval of the Hardees, who were the only owners who could maintain an action under this specific statute.
 
 
 15
 While reaching this conclusion, we recognize that North Carolina is a title theory state. Thus, in North Carolina when a mortgage is executed to secure the payment of a note, legal title passes and vests in the mortgagee but only as a security for the payment of the note. Gregg v. Williamson, 246 N.C. 356, 98 S.E.2d 481 (1957). For all other purposes, and against all persons other than the mortgagee, the mortgagor is regarded as the owner of the land. Except as against the mortgagee, he retains all the incidents of ownership. Cleve v. Adams, supra. Thus, our conclusion that the Hardees owned the property at issue for purposes of the statute.
 
 III.
 
 16
 The government's remedies in this case were against the Hardees. For instance, the government could have brought an action for waste or it could have brought an equitable action to restrain the cutting of timber. Brown v. Daniel, 219 N.C. 349, 13 S.E.2d 623 (1941). More importantly, the government could have foreclosed under the deeds of trust, paragraph 18 of which provides in part: "SHOULD DEFAULT occur in the performance or discharge of any obligation in this instrument or secured by this instrument ... the Government, at its option, with or without notice, may: (a) declare the entire amount unpaid under the note and any indebtedness to the Government hereby secured immediately due and payable, ... (d) authorize and request Trustee to foreclose ... and sell the property as provided by law." The government merely chose the wrong method of relief by proceeding under a statute that provides no relief under the circumstances of this case.
 
 IV.
 
 17
 We conclude that a strict construction of the statute mandates a reversal of the judgment against Garland Haddock because the government was not a bona fide owner as contemplated by the statute. Accordingly, the judgment of the magistrate is reversed.[4]
 
 
 18
 REVERSED.
 
 
 
 [1]
 Paragraph 9 of the deeds of trust forbids the mortgagor to "without the written consent of the Government, cut, remove, or lease any timber, gravel, oil, gas, coal, or other minerals except as may be necessary for ordinary domestic purposes."
 
 
 [2]
 Both parties consented to trial by a magistrate pursuant to 28 U.S.C. Sec. 636(c)
 
 
 [3]
 The magistrate found that the FHA was only entitled to recover for timber cut on the Hardees' one-half undivided interest, the fair market value of which was $8,500. After the timber had been cut, the FHA discovered that they did not have a deed of trust for the interest of Christy Michelle Hardee. The Hardees defaulted on the note secured by the deeds of trust. A settlement was reached which released the Hardees from the deeds of trust and the FHA acquired title to part of the tracts of land and gave the Hardees' daughter a deed to the remaining tracts
 
 
 [4]
 The portion of the magistrate's order awarding Haddock damages from the Hardees is also reversed. If Haddock is not liable to the government, he has no damages against the Hardees